# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

SEAN B. BERWANGER,                )
                                  )
    Plaintiff,                    )
                                  )  CAUSE NO. 3:14-cv-279
    v.                            )
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social Security, )
                                  )
    Defendant.                    )

## OPINION AND ORDER

Sean B. Berwanger appeals the Social Security Administration's determination that he is not disabled. In essence, he argues that the ALJ erred because he did not give Berwanger's treating physician's opinion controlling weight, improperly evaluated his credibility regarding the severity of his symptoms, and failed to include any limitations regarding his hands in the hypothetical posed to the vocational expert. Because I find that the ALJ relied on substantial evidence in making each of these findings, I **AFFIRM** his decision.

## BACKGROUND

Readers looking for a more extensive discussion of Berwanger's medical records are directed to the detailed summaries in the ALJ's decision (R. at 8-25)[1] and in Berwanger's opening brief (DE 11). Rather than reiterating those summaries, I will give

---

[1] Citations to the record will be indicated as "R."

a brief overview of the history of Berwanger's health issues and proceedings before the Social Security Administration.

**Berwanger's Health**

Berwanger's back troubles began at least as early as 2008. A lumbar MRI from February 2009 showed moderate spinal stenosis which means that Berwanger's spinal canal in the lumbar area had narrowed and was compressing the spinal cord and other nerves. Between 2008 and 2010, Berwanger saw his family doctor, Dr. Rebecca Case, M.D., about monthly or bimonthly to treat this condition. The main purpose of these visits appears to have been pain medication management. (*See generally* R. 249-56.) During this time, Berwanger's primary treatments included Vicodin (*see e.g.* R. 249, 256), therapeutic injections (R. 176, 191-92), medial branch blocks (R. 230-31), and physical therapy (R. 256). Berwanger continued to work throughout 2008, 2009, and 2010. In December 2010, however, Berwanger stopped working due to his back pain. (R. 16.)

At this point, Berwanger saw Dr. Case approximately every month through August 2011, and then only once over the next 12 months. During these 2010 and 2011 visits, Berwanger reported pain, and Dr. Case treated his pain with various medications. Some helped; some didn't. During this time, Dr. Case made virtually no clinical findings other than noting a visual and palpable muscle spasm in June 2011, some tenderness in the lumbar area at two visits, a somewhat reduced deep tendon reflex at two visits, a loss of muscle mass in the thighs (but no measurements provided)

in December 2011, and negative straight leg raising at every visit.[2]  (*See* R. 243-47, 347, 353.)  She also observed on two occasions during this time period that Berwanger had difficulty sitting still and needed to move around to be comfortable.  (*See e.g* R. 245, 353.)  Dr. Case recommended that Berwanger find work that was less physically demanding.  (R. 244.)

In June 2011, Berwanger ended up in the Emergency Room with back pain.  (R. 317.)  His examination was fairly benign, with no back tenderness, spasm, definite trigger point, nor deformity.  (R. 318-19.)  He also had adequate range of motion, was not in acute distress, and had no trouble walking.  (*Id*.)  The E.R. discharged him with the medications naproxen, hydrocodone-acetaminophen, and Flexeril.  (*Id*.)

The next month, Berwanger saw Dr. Mohammad Rahmany, M.D., after being referred by the State of Indiana Disability Determination Bureau.  Here again, Berwanger's examination results were benign with no back tenderness.  (R. 329-30.)  Berwanger also had full range of motion in his back and lower extremities, a normal gait, normal reflexes, and he could stoop, squat, walk both heel-to-toe and in tandem, and stand from a sitting position without difficulty.  (*Id*.)  Dr. Rahmany did find a positive straight leg raise, but found this result "questionable." (R. 330.)

---

[2]   The straight leg test is a test done during the physical examination to determine whether a patient with low back pain has an underlying herniated disk, often located at L5 (fifth lumbar spinal nerve). Wikipedia, "Straight leg raise," http://en.wikipedia.org/wiki/Straight_leg_raise (last visited Mar. 23, 2015).

3

A month later, M. Ruiz, M.D., a state agency medical consultant, found that Berwanger could perform functions consistent with light work. Specifically, Dr. Ruiz found that Berwanger could occasionally lift 20 lbs; could frequently lift 10 pounds; could stand, sit, or walk about 6 hours in an 8-hour workday; and had no limitations regarding pushing or pulling; no manipulative limitations (*e.g.* reaching, handling, fingering, and feeling); no visual limitations; no communicative limitations, and no environmental limitations. (R. 336-39.) Dr. M. Brill, M.D. – another state agency medical consultant – affirmed these findings in October 2011. (R. 350.)

That same month, October 2011, Dr. Case submitted the first of her four opinion letters, finding that Berwanger's "disease is limiting his ability to carry out gainful employment," he had "limited mobility," and that he was unable to sit, stand, or walk for more than 30 to 45 minutes at a time. (R. 349.) By December, Dr. Case reported that Berwanger was "unable to sit for more than 5 minutes at a time during our examination" and that he needed to move about to find a comfortable position to stand in. (R. 353.) She also stated that he "does have disability which does not allow gainful employment." (*Id*.)

Berwanger did not see Dr. Case again until nine months later in July 2012. At this visit, he asked Dr. Case to author another medical source statement for his disability application. (R. 362.) This time, Dr. Case reported that Berwanger was "not able to sit for more than 10 to 15 minutes at a time before having to reposition for pain control" and that he could "stand and/or walk for only 5 to 10 minutes at a time before

4

the pain becomes unbearable." (R. 354.) Dr. Case again stated that Berwanger was disabled. (*Id*.)

Berwanger saw Dr. Case approximately monthly from July through September 2012. Here again, Dr. Case made very few clinical findings. Berwanger's examination findings were mostly "unchanged." (R. 361-62.) His movements were slow, he had difficulty standing up straight, and his straight leg raise was negative. (R. 361.) In her two most recent progress notes from August and September 2012, Dr. Case reported that despite his reports of pain, Berwanger was resistant to long-term narcotics, was managing "reasonably well" with the medicine he was currently taking, felt that Vicodin provided him "reasonable relief." (*Id*.) Despite this finding, Dr. Case authored another opinion letter in October 2012 finding that Berwanger's "discomfort precludes him from obtaining gainful employment." (R. 355.) She further stated: "I do feel that Sean is disabled at this point." (*Id*.) There are no further progress notes after that time and it does not appear that Berwanger saw Dr. Case again.

**Social Security Administration Proceedings**

Berwanger applied for disability insurance benefits on June 13, 2011, alleging his disability began on December 28, 2010. (R. 11.) Berwanger was denied on both consideration and reconsideration. (*Id*.) After a hearing before an ALJ in which Berwanger testified, the ALJ issued a decision denying benefits. (R. 8-25)

The ALJ employed the standard five-step analysis. At step one, the ALJ confirmed that Berwanger had not engaged in substantial gainful activity since his

5

alleged date of disability. (R. 13.) At step two, the ALJ found Berwanger suffered from one severe impairment: degenerative changes of the lumbar spine. (*Id*.) At step three the ALJ found that Berwanger's conditions did not satisfy any listed impairment. (*Id*.) At step four, in analyzing Berwanger's residual functional capacity, the ALJ found that Berwanger could perform light work in that he could lift or carry 20 pounds occasionally and 10 pounds frequently. The RFC placed no limitation on Berwanger's ability to sit, stand or walk provided that he was allowed to change position for at least 5 minutes per hour. *(*R. 14.) At step five, the ALJ found Berwanger could not perform past relevant work but there were a sufficiently significant number of jobs in the national economy he could perform. (R. 18-20.)

Berwanger argues that the ALJ improperly failed to give controlling weight to the opinions of his treating physicians, improperly evaluated Berwanger's credibility regarding the severity of his symptoms, and failed to provide any limitations regarding his hands in the hypothetical posed to the vocational expert. I take up each argument in turn below.

## DISCUSSION

If an ALJ's findings of fact are supported by "substantial evidence" then they must be sustained. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review of the ALJ's findings is deferential. *Overman v.*

*Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Id.*

**Dr. Case's Opinion**

Berwanger argues that the ALJ erred by not affording controlling weight to his treating physician, Dr. Rebecca Case, M.D. First, the ALJ was correct in refusing to afford special significance to Dr. Case's opinion that Berwanger was disabled because that is a matter reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). As for the rest of her opinion, the ALJ afforded it little weight because it was based primarily on Berwanger's subjective complaints, contained few clinical findings, and conflicted with the rest of the record. These findings are supported by substantial evidence. To disagree would require me to re-weigh the evidence — a task the Seventh Circuit has repeatedly told reviewing courts they are prohibited from doing. *See e.g. Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010); *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). But once well-supported contradicting evidence is introduced, the treating physician's opinion is no

7

longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to weigh. *Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008). This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, while controlling for the biases that a treating physician may develop such as friendship with the patient. *Oakes v. Astrue*, 258 F. App'x 38, 43-44 (7th Cir. 2001); *Ketelboeter*, 550 F.3d at 625; *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

So the question becomes whether the ALJ properly found that Dr. Case's opinion was not well supported and was contradicted by other evidence. To begin with, Dr. Case's progress notes from 2010 and 2011 made very few clinical findings other than one instance of muscle spasm, some tenderness in the lumbar area at two visits (but none since June 2011), a somewhat reduced deep tendon reflex at two visits, an unspecified amount of muscle loss in Berwanger's thighs in December 2011, and negative leg raises at all visits.[3] (*See* R. 243-47, 347, 353.) Despite these scant findings, she authored two letters during this time -- in October and December of 2011 -- opining on his functional limitations, but it's not at all clear what Dr. Case based these opinions on because there are no progress notes from the time period between August 2011 and

---

[3] Berwanger claims this was not the appropriate test for spinal stenosis and therefore any reliance on this by the ALJ is flawed and should be rejected. I don't see how that is the case. First, an ALJ can't be faulted for failing to address evidence not presented to him. *Eads v. Sec. of Dept. of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). No one ever raised with the ALJ whether this was the appropriate test. Second, Berwanger's own physician, Dr. Case, performed this test at every office visit with Berwanger. Surely Berwanger isn't claiming that her findings were flawed? But ultimately, even if this is the wrong test to use, it's by no means the sole evidence on which the ALJ relied so any error would be harmless given the rest of the medical evidence supporting the ALJ's decision.

July 2012. In other words, it doesn't appear that Dr. Case actually examined Berwanger during this time period, other than in December 2011 when she states in her opinion letter that he was seen in the office that day. (R. 353.)

Berwanger resumed his visits with Dr. Case in July 2012 and then saw her about monthly until September 2012. During these visits, Dr. Case again made virtually no clinical findings, instead simply reiterating Berwanger's reported complaints. (R. 361-62.) She did observe, however, that he moved slowly and had difficulty standing up straight, but again had a negative straight leg raise at each visit. (*Id*.) Despite these few objective findings, Dr. Case concluded in July 2012 that Berwanger could not sit for more than 10 to 15 minutes at a time and could stand or walk for only 10 or 15 minutes. (R. 354.) That appears to be based solely on his own reports, as indicated in Dr. Case's July 2, 2012 treatment note saying "He states that he is not able to sit for more than 15 minutes at a time." (R. 362.) Overall, it appears that Dr. Case's opinion letters were based primarily on Berwanger's subjective claims instead of objective clinical findings. That alone would be a valid reason for the ALJ to discount those opinions as not well-supported. *Ketelboeter*, 550 F.3d at 625 ("if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it."); *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

What's more, Dr. Case's opinion letters aren't consistent with the clinical findings – hers, or the state agency physician's. Her opinion letters paint a picture of a man in

9

severe pain whose condition quickly deteriorated into disability over the course of just a few months. Yet her clinical findings paint a very different picture of a man who was certainly in pain, but whose condition was fairly stabilized by medication and who was managing reasonably well. Moreover, the State Agency physicians who *did* make extensive clinical findings regarding Berwanger's functional abilities found that Berwanger could perform light work. (R. 329-30, 336-39, 350.)

Berwanger explains these seemingly inconsistent findings by claiming that his pain had worsened since seeing the state agency doctors in 2011. If his condition did, indeed, worsen, then Berwanger needed to provide objective medical evidence of that. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); *Griffith v. Callahan*, 138 F.3d 1150, 1155 (7th Cir. 1998) *overruled on other grounds*. But the objective medical evidence doesn't support that as his examination findings and treatment remained virtually unchanged during 2011 and 2012. He said himself in August 2012 that he was "managing reasonably well." (R. 361) And in September 2012 – the last treatment note in the record – he reported that "Vicodin gives him reasonable relief and he wants to stay with it." (*Id*.) While I recognize that "doing well" is not the same thing as being able to work, *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001), I think the ALJ was justified in weighing Berwanger's statement against the alleged worsening of his symptoms.

Accordingly, the ALJ found that "no treating or examining physician made any clinical findings of functional limitation that would preclude the claimant from working in accordance with the assessed residual functional capacity." (R. 17.) The ALJ wasn't

playing doctor, as Berwanger claims. Instead, he weighed the evidence in a thorough and well-reasoned fashioned. And in doing so, he found Dr. Case's opinions should not be given controlling weight because they were not well-supported and conflicted with the rest of the case record. I find, therefore, that the ALJ's decision to afford Dr. Case's opinion little weight was supported by substantial evidence.

Finally, Berwanger claims the ALJ erred by not ordering further x-rays or MRIs and by not contacting Dr. Case for clarification about her opinion. But those steps were unnecessary. First, 20 C.F.R. § 404.1512(e) requires the ALJ to reach out to a treating physician only if the evidence is insufficient to determine disability. *Starbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). The ALJ never indicated that he thought the evidence was insufficient, or even, as Berwanger claims, that he thought her opinions were ambiguous. He wasn't playing doctor – he just thought that based on the evidence, she was wrong. Also, I don't see anything in the record that would necessitate obtaining further MRIs or x-rays. No doctor, examining or treating, ordered further tests. Further, the medical evidence doesn't indicate a worsening or any new symptoms that would seemingly indicate further testing was needed. Here, the record was adequate to make a disability determination. There wasn't any need to go beyond that. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993) ("How much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment"); *Nicholson v. Atrue*, 341 Fed.Appx. 248, 254 (7th Cir. 2009).

**Credibility**

At the outset, Berwanger's claim that the ALJ didn't consider the factors under 20 C.F.R. 404.1529(c) is a nonstarter because the ALJ explicitly listed those factors and stated that he considered them in assessing Berwanger's credibility. (R. 15.) The ALJ then listed Berwanger's primary complaints implicated by those factors. (*Id*.)

The heart of Berwanger's challenge is whether the ALJ provided specific rationales for finding Berwanger's claims less than credible. I find he did. Specifically, the ALJ found that despite Berwanger's claimed impairment, he was able to perform personal care tasks, drive short distances and occasional long distances, did not use any assistive devices to walk, and received unemployment benefits until early 2012, which to the ALJ "indicates the claimant's willingness and ability to work." (R. 15.) The ALJ stated that he "considered the foregoing when assessing the claimant's credibility" and ultimately concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id*.) Although that language has been criticized by the Seventh Circuit as "meaningless boilerplate," using that boilerplate "does not necessarily undercut the ALJ's decision if the ALJ otherwise provides specific and legitimate reasons for discrediting the claimant's testimony." *Lazier v. Colvin*, No. 14-2528, 2015 WL 500791, at *3 (7th Cir. Feb. 6, 2015).

And that's what the ALJ did here. Throughout the bulk of his opinion, the ALJ discussed the various inconsistencies between Berwanger's complaints and the medical

evidence. (*See* R. 16-18.) For example, the ALJ found significant the fact that claimant was able to work from 2008 through 2010, despite his claims of constant back pain. (R. 16.) He also found that Dr. Case's medical findings at the time he stopped working in December 2010 did not support symptoms and limitations as severe as Berwanger claimed. (*Id*.) The ALJ further found it significant that when Berwanger resumed seeing Dr. Case in July 2012, it was to have her fill out his request for a medical source statement for his disability application. (R. 17.) And even then, despite his complaints of constant pain, Berwanger refused to take stronger medication that Dr. Case recommended because he was "afraid" of it and that he was "managing reasonably well" and that Vicodin provided "reasonable" relief of his symptoms. (*Id*.) Based on all of this, and additional findings not listed here, the ALJ concluded that Berwanger's complaints were not entirely credible because they were inconsistent with the record as a whole. (R. 18.)

It is the ALJ's job, and not mine, to make credibility determinations and I am not allowed to disturb his determination unless it is "patently wrong." *Brewer v. Chater*, 103 F.3d 1384, 1392 & n. 11 (7th Cir. 1997) *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 199); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A credibility determination is "patently wrong" only where the ALJ doesn't explain or support his determination at all. *Elder*, 529 F.3d at 413-14. Here, the ALJ provided more than enough explanation and support, so I won't disturb his credibility determination.

**Hypothetical Posed to VE**

Berwanger's last challenge to the ALJ's ruling is that the ALJ failed to include any limitations in the RFC regarding his alleged difficulty with using his hands. (DE 11 at 12-13.) This argument is pretty far-fetched. While Berwanger was diagnosed with and treated for carpal tunnel syndrome and ulnar neuropathy in July 2009 and complained of further difficulties in December 2010, the record is silent about this condition after December 2010. And even in December 2010, Dr. Case didn't find anything significant in her examination of Berwanger's hands, fingers, and wrists. (R. 247.) Moreover, Berwanger didn't identify any trouble with his hands or wrists as an impairment in connection with his disability application. The ALJ acknowledged all of this and concluded that any difficulties with his wrists did not constitute a severe impairment because the objective evidence since Berwanger's alleged onset date was limited to his lumbar spine complaints. The ALJ adequately addressed the evidence and was not required to include any limitations regarding Berwanger's wrists or hands because those complaints did not constitute an impairment supported by medical evidence. *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

## CONCLUSION

For the forgoing reasons, the decision of the ALJ is **AFFIRMED**. The Clerk is directed to enter a judgment in favor of the Commissioner and against Berwanger.

**SO ORDERED**.

ENTERED: March 23, 2015

s/Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT